RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
MEGAN C. HOFFMAN
Assistant Federal Public Defender
Nevada State Bar No. 09835
DANICE ARBOR JOHNSON
Research and Writing Attorney
411 E. Bonneville Avenue, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
(702) 388-6261 (FAX)

Attorneys for Petitioner

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RICKEY COOPER, | CA No.  15-15755 |
| Petitioner- Appellant, | |
| vs. | DC No. 3:97-cv-00222-JCM-WGC (Nevada, Reno) |
| E.K. McDANIEL, Warden, et al., | |
| Respondents-Appellees. | **APPELLANT'S APPLICATION FOR CERTIFICATE OF APPEALABILITY** |

COMES NOW, the Petitioner, Rickey Cooper, through his attorneys,

MEGAN C. HOFFMAN, Assistant Federal Public Defender, and DANICE ARBOR

JOHNSON, Research and Writing Attorney, and submits this Application for

Certificate of Appealability.  This Application is based upon the attached Points and

1

Authorities and all pleadings, papers and exhibits on file in this action.

Respectfully submitted this 17th day of April, 2015.

LAW OFFICES OF THE
FEDERAL PUBLIC DEFENDER


By: _____          _____
      MEGAN C. HOFFMAN                    DANICE ARBOR JOHNSON
      Assistant Federal Public Defender   Research and Writing Attorney

## POINTS AND AUTHORITIES

## I.

## LEGAL ANALYSIS

### A.    Introduction

Petitioner, Rickey Cooper ("Cooper") respectfully moves this Court for an order granting a certificate of appealability following the district court's denial of Cooper's amended federal habeas petition on the merits and the denial, in full, of a certificate of appealability.  Docket #153.[1]

Cooper's case was previously before this Court with regard to the district court's dismissal of Cooper's petition based upon the finding that the petition was procedurally barred.  Docket #91.  *See also Cooper v. Neven*, 641 F.3d 322 (9th Cir. 2011).  In that previous Order, the district court, as in the instant matter, also denied in full a certificate of appealability.  Docket #91.  This Court granted a certificate of appealability and in a published opinion, reversed the district court's finding of

---

[1] All citations in this pleading are to documents in the district court record ("Docket #") or to Petitioner's exhibits ("Ex.") filed in support of his amended petition located at Docket # 52-66; 80; 125.

procedural default with respect to Cooper's *Brady* and *Napue* claims[2] and remanded the case to the district court: "[W]e reverse the district court's finding of procedural default with respect to Cooper's *Brady* and *Napue* related claims, and remand to the district court for further proceedings." *Cooper*, 641 F.3d at 333.

Respondents' Request For Rehearing and Suggestion For Rehearing En Banc was denied by this Court. USCA Ninth Circuit Case No.08-16973; *see also* Docket #105. Respondents were granted a stay of issuance of mandate. *Id.* Following the United States Supreme Court's denial of Respondents' Petition for Writ of Certiorari, the stay was lifted and the mandate issued in this case. USSC Case No. 11-382; Docket #110.

Following the remand to the district court, Cooper litigated another motion to dismiss filed by Respondents which again alleged, *inter alia*, that Cooper's *Brady/Napue* claims were not timely filed, unexhausted and procedurally barred from review. The district court denied Respondents' motion to dismiss,[3] finding Cooper's

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963); *Napue v. Illinois*, 360 U.S. 264 (1959). This Court also remanded three ineffective assistance of counsel claims which it found to have been raised by Cooper during his first round of state post-conviction review and denied on the merits by the Nevada Supreme Court. *Cooper*, 641 F.3d at 331.

[3] Respondents' assertion that exhibits filed with the amended petition rendered the amended petition unexhausted (Docket #121), was also denied by the district

(continued...)

4

*Brady/Napue* claims related back to a timely amended petition, were factually and legally exhausted, and pursuant to this Court's mandate, were not procedurally barred from review. Docket #133 at 13, 18-21, 23. On June 17, 2013, Respondents filed an Answer on the merits (Docket #138), and on November 22, 2013, Cooper filed a Reply. Docket #147.

On March 17, 2015, the district court filed an Order denying Cooper's *Napue*, *Brady*, and *Strickland* claims on the merits. Docket #153.

**B.     The Legal Standard For A Certificate Of Appealability.**

The district court denied a Certificate of Appealability ("COA") on each of Cooper's grounds for relief. Docket #153. Consequently, Ninth Circuit Rule 22-1(d) applies. That rule provides, in pertinent part, as follows:

> (d) <u>Denial in Full by District Court</u>. If the district court denies a COA as to all issues, petitioner may file a motion for a COA in the court of appeals within 35 days of the district court's entry of its order (1) denying a COA in full, or, (2) denying a timely filed post-judgment motion, whichever is later. If petitioner does not file a COA motion with the court of appeals after the district court denies a COA motion in full, the court of appeals will deem the notice of appeal to constitute a motion for a COA.

In order for a COA to lie, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Prior to the enactment

---

[3](...continued)
court. Docket #133.

of the Antiterrorism and Effective Death Penalty Act (AEDPA), that standard was satisfied if the petitioner could "demonstrate that the issues are debatable among jurists of reason; that a court **could** resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotations omitted, emphasis added). This standard was reaffirmed in *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).

According to prevailing federal law, the focus for granting or denying an application for a COA is whether a petitioner has made a substantial showing of the denial of a constitutional right. In defining the "substantial showing" standard, the Supreme Court admonished district courts that they may not deny applications solely because they have already denied the petition: "[O]bviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor." *Barefoot*, 463 U.S. at 893 n.4. Rather, a certificate must issue if the appeal presents a "question of some substance . . . (1) that is debatable among jurists of reason . . . (2) that a court could resolve in a different manner . . . (3) that is adequate to deserve encouragement to proceed further . . . or (4) that is not squarely foreclosed by statute, rule, or authoritative court decision . . . or . . . [that is not] lacking any factual basis in the record . . . ." Id. at 893 & n.4, 894 (internal quotations omitted).

/ / /

6

The Supreme Court reiterated this principle in *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). The Court reasserted its preference for ensuring that a prisoner's case would be reviewed by an appellate court even if the merits of his claim are quite weak. Id. ("[O]ur opinion in *Slack* held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application for certificate of appealability merely because it believes the applicant will not demonstrate an entitlement to relief.")

The *Barefoot/Slack* standard was given even more illumination in *Miller-El*; it is now clear that a claim that may appear weak should be entitled to full appellate review. Id. at 338 ("Indeed, a claim can be debatable even though every jurist of reason might agree, after the certificate of appealability has been granted and the case has received full consideration, that Petitioner will not prevail.")

Cooper now seeks a certificate of appealability on the following issues:

1.  WHETHER THE DISTRICT COURT ERRED IN DENYING COOPER'S *NAPUE v. ILLINOIS* CLAIM THAT HIS CONVICTION WAS PROCURED WITH THE USE OF KNOWINGLY FALSE TESTIMONY AS DEMONSTRATED BY A TRIAL WITNESS' SUBSEQUENT RECANTATION OF HIS TRIAL TESTIMONY.

2.  WHETHER THE DISTRICT COURT ERRED IN DENYING COOPER'S *BRADY v. MARYLAND* CLAIM THAT THE PROSECUTION FAILED TO PRODUCE MATERIAL EVIDENCE REGARDING A TRIAL WITNESS.

3.   WHETHER THE DISTRICT COURT ERRED IN DENYING COOPER'S *STRICKLAND v. WASHINGTON* CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO OBJECT TO INSTANCES OF PROSECUTORIAL VOUCHING FOR A TRIAL WITNESS.

**B.   Cooper Is Entitled To A Certificate Of Appealability On Each Of The Proffered Issues.**

Cooper sets forth three assignments of error that he asks this Court to certify pursuant to 28 U.S.C.§ 2253 and Circuit Rule 22-(b). Cooper respectfully submits that the three claims should proceed under *Barefoot/Slack/Miller-El*. Reasonable jurists could disagree with the district court's decision to deny these grounds. As such, a COA is appropriate for each assignment of error.[4]

**1.   Reasonable Jurists Could Debate Whether The District Court Erred In Denying Cooper's *Napue* Claim That His Conviction Was Procured With The Use Of Knowingly False Testimony As Demonstrated By A Trial Witness's Subsequent Recantation Of His Trial Testimony.**

The district court denied Cooper's *Napue* claim, raised in Ground One of the petition (Docket #51), finding that it "[did] not present a prima facie case for relief under either *Brady* or *Napue*." Docket #153 at 15. The district court's Order,

---

[4] For the purpose of brevity, Cooper has provided an outline of the factual support as to the three proposed claims for review. The facts relating to the claims are set forth in extensive detail in the Reply. *See* Docket #147. To the extent this Court requires further factual elaboration, Cooper would refer the Court to his Reply (Docket #147) as indicated within.

which suggested that a *Napue* claim was not properly raised in Ground One, ignored this Court's holding that the Nevada Supreme Court's default of "Cooper's *Brady* and *Napue* related claims" did not rest on an adequate and independent state ground because the merits of the claims "dovetail exactly with the cause-and-prejudice analysis." *Cooper*, 641 F.3d at 333. The district court acknowledged this Court's finding in the Order:

> According to the Ninth Circuit, the Nevada Supreme Court adjudicated Cooper's *Brady* and *Napue* related grounds (Grounds 1 and 2) on the merits in its March 2006 decision, when it addressed the claims in the context of determining whether Cooper could show cause and prejudice to excuse his procedural default of the claims. *Cooper*, 641 F.3d at 332-33.

Docket #153 at 8. Despite, this acknowledgment, the district court reviewed Ground One as if a *Napue* claim was not raised by Cooper.

The district court's finding that Cooper failed to present a *Napue* claim also contradicted a previous finding made in the Order denying Respondents' motion to dismiss Cooper's *Napue* and *Brady* claims. *See* March 28, 2013 District Court Order:

> Grounds 1 and 2 of the third amended petition, the *Brady* and *Napue* related claims, are tied to the "same core of operative facts" as alleged in the second amended petition, and as such, grounds 1 and 2 of the third amended petition are timely.

Docket # 133 at 13.

/ / /

9

> Inherent in the Ninth Circuit's ruling is the fact that the Nevada Supreme Court reviewed grounds 1 and 2 on the merits, ... . If the highest state court considers the merits of the claim, then exhaustion is satisfied. ... Since the Ninth Circuit determined that the *Brady/Napue* claims, grounds 1 and 2 of the third amended petition, were considered by the Nevada Supreme Court on the merits, these grounds are exhausted.

Docket # 133 at 18-19.

> Moreover, because exhaustion and procedural default defenses were decided by the Ninth Circuit, the law of the case doctrine prevails. ... [T]his court is precluded from considering respondents' exhaustion arguments as to these claims.

> Even assuming this court was not precluded from reviewing the exhaustion issue under the doctrine of law of the case, the state court filings establish that **grounds 1 and 2 of the third amended petition were fairly presented to the Nevada Supreme Court**.

Docket #133 at 19 (emphasis added.)

> In its order of remand, the Nevada Supreme Court was aware of the overlapping procedural and substantive aspects of petitioner's allegation of witness recantation and the withholding of evidence by the prosecution: ... . This demonstrates that the claim was considered on its merits in the Nevada state courts. ...

> **The court finds that ground 1 of the third amended petition is exhausted**.

Docket #133 at 19-20 (emphasis added.)

> As he argues in this court, petitioner argued in the Nevada state courts that he is entitled to relief on the merits of his *Brady/Giglio/Napue* claim ... . This argument was accepted by the Ninth Circuit with respect to both grounds 1 and 2. ... Because the Nevada Supreme Court ruled on

the merits for the *Brady* claim, **this court finds that ground 2 of the third amended petition is exhausted**.

Docket #133 at 21 (emphasis added.)  There is little doubt that the district court previously found that Ground One raised a claim based upon *Napue*.  To later find that Cooper did not allege a *Napue* violation is wrong, or, at least, debatable.

Further, in asserting that no prima facie case for the *Napue* claim was presented, the district court misstated the requirements for a *Napue* violation.  The district court stated: "Cooper makes no allegation under Ground 1 that the state withheld evidence favorable to the defense or that it knowingly fostered the presentation of false testimony."  Docket #133 at 15.  Cooper detailed the requirements necessary for him to prevail on his *Napue* claim: that "the petitioner must show that (1) the testimony [or evidence] was actually false, (2) the prosecution knew or should have known that the testimony [or evidence] was actually false, and (3) that the false testimony [or evidence] was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003).  Docket #147 at 17.

Cooper provided detailed arguments (incorporated herein by reference), to demonstrate that he could successfully satisfy all three *Napue* requirements.  *Id.* at 17-47.  The district court did not address Cooper's arguments, finding solely that Cooper did not allege that the State "knowingly fostered the presentation of false testimony."

11

Docket #133 at 15. Reasonable jurists could debate the district court's conclusion because the district court improperly inflated *Napue*'s "knowing" requirement and, in any event, Cooper did allege that the knowing presentation of false evidence resulted in his conviction.

Cooper has consistently maintained that there was a monetary agreement between witness, Donnell Wells ("Wells") and the district attorney investigators in exchange for Wells's trial testimony against Cooper and that Wells was coached by the investigators to testify that Cooper was the shooter. Docket #51 at 9-17; Docket #147 at 17-47. At the evidentiary hearing, Wells testified that he told the investigator he did not see who shot the victim, but nevertheless the investigator told Wells that Cooper was the shooter and that Wells would only get the money they promised him if he testified that Cooper was the shooter. Docket #62, Ex. 100 at 11-45. While there is no evidence that the prosecutor himself was aware of the arrangement between the investigators and Wells, the State's constitutional obligation to Cooper is not absolved.

*Napue* applies whenever a prosecutor "knew or **should have known** that the testimony was false." *Jackson v. Brown*, 513 F.3d 1057, 1075 (9th Cir. 2008) (emphasis added) (internal quotations and citations omitted); *see also Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("The individual prosecutor has a duty to learn of

12

any favorable evidence known to the others acting on the government's behalf in the case, ... .") As such, the district attorney investigators's knowledge is imputed to the prosecutor/State. *Napue* and *Giglio v. United States*, 405 U.S. 150 (1972),[5] make perfectly clear that the constitutional prohibition on the 'knowing' use of perjured testimony applies when **any** of the State's representatives would know the testimony was false." *Jackson v. Brown*, 513 F.3d at 1075 (emphasis in original.)

Instead of addressing Cooper's assertions with regard to *Napue*'s requirements, the district court opted to restructure Cooper's *Napue* claim into a due process violation based solely on Wells's recantation of his false trial testimony.[6] Docket #153 at 15. After restructuring Cooper's *Napue* claim into a "freestanding actual innocence claim" (Docket #153 at 15-16), the district court then explained why a freestanding actual innocence claim is not viable:

/ / /

---

[5] In *Giglio*, the Supreme Court found reversible error under both *Napue* and *Brady*. "*Giglio*'s focus on the responsibility of the prosecutor to investigate all promises made on behalf of the government extends to promises made by the police, who also make any such promises as spokespersons for the government, and for whom the prosecutor bears responsibility." *Jackson v. Brown*, 513 F.3d at 1073.

[6] Wells's recantation of his trial testimony is the reason that Cooper found out that Wells's trial testimony was false. Cooper is not asserting that Wells's recantation and false testimony, standing alone, violated his constitutional rights. The constitutional violation alleged in Ground One of Cooper's petition is premised upon a violation of *Napue* - the State's knowing use of false testimony.

13

Theoretically, the revelation that a defendant was convicted based on false testimony might provide grounds for habeas relief based on actual innocence. ... However, even in a capital case (which this is not), a freestanding actual innocence claim might warrant federal habeas relief only upon an "extraordinarily high" and "truly persuasive" threshold showing.

Docket # 153 at 15 (internal citations omitted.) Reasonable jurists could debate whether the district court erred in analyzing Cooper's *Napue* claim on the basis of a "freestanding actual innocence claim" - an assertion that Cooper did not make with regard to his *Napue* claim.[7]

Equally debatable is the district court's finding that the Nevada Supreme Court's conclusion that Wells's testimony was harmless, by itself "precludes relief, separate and apart from whether false testimony (in the absence of State wrongdoing) can provide grounds for habeas relief." Docket #153 at 16. The Nevada Supreme Court found that "even absent Wells's identification of Cooper as the shooter, the jury still would have convicted Cooper." Ex. 124 at 16.

/ / /

---

[7] Cooper is aware that actual innocence/fundamental miscarriage of justice is asserted, primarily, to overcome a procedural default. *See Murray v. Carrier*, 477 U.S. 478 (1986); *Schlup v. Delo*, 513 U.S. 298 (1995). "A claim of actual innocence under *Schlup* is not itself a constitutional claim, but instead a gateway through which a habeas petition must pass to have his otherwise barred constitutional claim considered on the merits." *Vosgien v. Persson*, 742 F.3d 1131, 1134 (9th Cir. 2014).

14

The district court appears to take for granted that the Nevada Supreme Court actually reached the conclusion that Wells's false testimony was harmless. To the extent a harmless error analysis was conducted, the Nevada Supreme Court's review on this question dealt with that court's own notion of what the federal constitutional harmless error rule was without citing to any rule. *See* Ex. 124 at 16. The Nevada Supreme Court made no citation to *Chapman v. California*, 386 U.S. 18 (1967), nor to federal cases analyzing *Chapman*'s harmless error rule.[8] *Id.* Even, assuming *arguendo*, that the district court is correct in finding that the Nevada Supreme Court made a finding of harmless error, reasonable jurists could debate the appropriateness of the district court's deference to an implied finding of harmless error by the Nevada Supreme Court. *See* Docket #65, Ex. 124 at 17-18. Federal habeas courts considering harmless error apply the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993); *see Merolillo v. Yates*, 663 F.3d 444 (9th Cir. 2011); *Fry v. Pliler*, 551 U.S. 112, 119-20 (2007). Such review does not require consideration of whether the state court's harmless-error conclusion was an unreasonable application of federal

---

[8] In conducting a harmless error analysis, the Nevada Supreme Court uses the *Chapman* standard. *See Manley v. State*, 979 P.2d 703, 708 (Nev. 1999). As outlined in the argument below, federal courts use the *Brecht v. Abrahamson*, 507 U.S. 619 (1993), standard to conduct a harmless error analysis. In any event, Cooper submits that the Nevada Supreme Court did not address harmless error under either standard.

15

law. *Merolillo*, 663 F.3d at 455.[9]

Further, it is debatable among jurists of reason whether the Nevada Supreme Court subjected Cooper's claim to a higher standard of materiality than required. In concluding that despite the false testimony of Wells, the evidence was sufficient to convict Cooper, the Nevada Supreme Court conducted a sufficiency of the evidence test. This is not the appropriate standard, however, in addressing materiality as applicable to *Napue* errors. Rather, the standard is whether there is **any** reasonable likelihood that the false testimony **could** have affected the judgment of the jury. *United States v. Agurs*, 427 U.S. 97, 112-13 (1976) (emphasis added); *see also Dow v. Virga*, 729 F.3d 1041 (9th Cir. 2013) ("... [A] far less showing of harm is required under *Napue*'s materiality standard than under ordinary harmless error review. ... *Napue* requires us to determine only whether the error **could** have affected the judgment of the jury, whereas ordinary harmless error review requires us to determine whether the error **would** have done so.") *Id.* at 1048 (emphasis in original.); *Amado v. Gonzalez*, 758 F.3d 1119, 1139 (9th Cir. 2014) ("The test for materiality 'is not a sufficiency of the evidence test'."), *citing Kyles v. Whitley*, 414 U.S. 419, 434-35 (1995) (*Brady* does not ask, as in a sufficiency of the evidence claim, whether the jury

---

[9] *See Chappell v. Ayala*, 135 S.Ct. 401 (2014) (petition for writ of certiorari granted as to whether this Court properly applied the standard articulated in *Brecht*).

16

could have convicted. The question is whether the undisclosed evidence undermines confidence in the outcome.)

Cooper has thoroughly set forth the relevant factual and legal underpinnings of his *Napue* claim. *See* Amended Petition, Docket #51 at 9-17; Reply, Docket #147 at 17-47. Cooper's argument for relief on the merits is outlined as follows:

a. Wells (who was a 15-year-old ninth grade student at the time of the trial) gave false testimony at Cooper's 1983 trial (*see* Docket #147 at 17- 47). That Wells's testimony was false is corroborated by:

(1.) The trial prosecutor's statements made during the 1983 trial which corroborate Wells's evidentiary hearing testimony that he had never spoken with the prosecutor before the day he testified. (*Id.* at 19.)

(2.) Wells's 1983 witness voucher which corroborated that he received $75.00 for 3 days of testimony ($25.00 per day) when his testimony occurred during one afternoon. (*Id.* at 19; 26) and that he would receive "more" money than he was entitled to get if he testified against Cooper. (Docket #66, Ex. 129 at 9-10.)

(3.) The district attorney investigator's 2001 interview of Wells wherein the investigator told Wells that he was not coached by the 1983 investigators, relentlessly told Wells that he had received a witness fee in conformance with Nevada law (using the words "legitimate" and "witness fee" thirty-one times), and appeared to threaten Wells with the prospect of perjury. (Docket #147 at 14-16, 20-21.)

/ / /

(4.)   Wells's 2004 evidentiary hearing testimony wherein he testified that he committed perjury at the 1983 trial; that he told the district attorney investigators that he did not see Cooper shoot the victim; that the investigators told Wells that Cooper was the shooter, that he was promised money by the investigators if he testified that Cooper was the shooter, that after he was testified he received money and was taken by the investigator to the mall to buy shoes and jeans. (*Id.* at 17-17, 21-22, 37-40.)

(5.)   Wells fabricated details about the events in question. (*Id.* at 37-40.)   One such made up event was medically impossible.   Wells testified that after the victim had died, the victim's heart was revived by the paramedics, the victim came back to life, said "they got me", asked for someone to call his mother and then died again (Docket #53, Ex. 15 at 285-287), while the medical examiner testified that death would have been "immediate". (*Id.* at 83-85.)

b.   The district attorney investigator in 1983 knew and the trial prosecutor should have known that Wells's trial testimony was false. (Docket #147 at 22-27.)

(1.)   Wells's affidavit (Docket #62, Ex.99) and evidentiary hearing testimony (Docket #62, Ex. 100) in which Wells states that he told the district attorney investigators in 1983 that he did not see Cooper shoot the victim is unrebutted.

(2.)   The interview of Wells conducted by a district attorney investigator in 2001 (Docket #62, Ex. 99), which occurred prior to the evidentiary hearing, demonstrates the State's continuing attempts to influence Wells's testimony in this matter.

c.   The materiality of Wells's 1983 trial testimony (Docket #147 at 27-37), is shown by:

18

(1.) The prosecutor at the 1983 trial demonstrated the materiality of Wells's testimony during closing arguments by rejecting the other witnesses' version of events (that Cooper's car was parked) and adopting Wells's version of events (that Cooper's car was moving). (*Id.* at 28, 29-33.) Wells's testimony was the only evidence used by the prosecutor to argue motive and premeditation. (*Id.* at 30-32.) The prosecutor also vouched for Wells assuring the jury that they had no reason to doubt his credibility (*Id.* at 32), advising the jury Wells was a "hero". (*Id.* at 28, 32.)

(2.) At his deposition in 2002, the prosecutor testified that Wells was a "very important witness" and a "key witness in this case." (Docket #63, Ex 101. at 22, 37; *see also* Ex. 147 at 28-29.)

(3.) The trial court's tendentious questioning of Wells shows the materiality of Wells's testimony. (*Id.* at 33-35.) Wells was the trial only witness of which the trial court conducted such extensive re-examination.

d. Cooper asserted that the juror's inability to properly evaluate Wells's credibility and motivation to testify affected their verdict. (*Id.* at 35-37.)

e. In support of the assertion that the Nevada Supreme Court's decision was based on an unreasonable determination of the facts under §2254(d)(2), and was contrary to and/or an unreasonable application of clearly established federal law under §2254(d)(1) (*Id.* at 40-47), Cooper conducted a detailed comparison of Wells's testimony with the testimony of the other trial witnesses. *Id.* at 37-40.

Cooper submits that he has demonstrated that reasonable jurists could debate

whether Wells testified falsely at trial, that the district attorney investigator(s) knew

that his testimony was false and/or that the prosecutor should have known that his testimony was false, and that Wells's trial testimony was material. Further, Cooper can show harm under the "far less showing of harm...required under *Napue*'s materiality standard than under ordinary harmless error review." *Dow*, 729 F.3d at 1048.

Reasonable jurists could debate whether Cooper has satisfied the requirements for a showing of a *Napue* violation. Cooper respectfully submits that he has satisfied the standards for issuance of a COA for his *Napue* claim.

### 2. Reasonable Jurists Could Debate Whether The District Court Erred In Denying Cooper's *Brady* Claim That The Prosecution Failed To Produce Material Evidence Regarding A Trial Witness.

The district court denied Cooper's *Brady* claim, raised in Ground Two of the petition (Docket #51 at 18-33), essentially adopting the opinion of the Nevada Supreme Court and concluding that the state court opinion was not unreasonable. *See* Docket #153 at 17, 18, 19, 20, 21.

Reasonable jurists could debate whether the district court improperly acquiesced to the factual findings of the Nevada Supreme Court. The district court cited exclusively to the 2006 Nevada Supreme Court decision in its Order. Docket #65, Ex. 124; *see also* Docket #153 at 16. It is debatable whether the district court's "rubber-stamp" of the Nevada Supreme Court findings went beyond a showing of

20

deference and was instead an abdication of its responsibility to review Cooper's *Brady* claim pursuant to the dictates of AEDPA. *See Doody v. Ryan*, 649 F.3d 986, 1006-1007 (9th Cir. 2011) (internal citations omitted) ("[C]omity does not command abdication. Rather, as Article III judges, we have a responsibility to grant habeas relief if Supreme Court precedent has been unreasonably applied. *See Miller-El v. Cockrell*, ... ("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief.").)

A further debatable concern with the district court's approach is that it ignored that the source of the Nevada Supreme Court's factual findings were taken predominantly from pleadings filed by the State's attorneys during the state post-conviction proceedings. The Nevada Supreme Court's 2006 unpublished affirmance of the state district court's decision (denying the petition on the basis of procedural default), included a one-sided version of the trial facts and interpretation of the evidence presented at the evidentiary hearing in support of Cooper's *Brady*/*Napue*/*Giglio* claims during his third post-conviction proceeding. Docket #62, Ex.100. The reason that the "facts" and "conclusions" were one-sided is because the source of the Nevada Supreme Court's factual findings, opinions and conclusions were taken from the state district court's amended findings which was written by the

State's attorney and adopted verbatim by the state district court. Docket #64, Ex. 113. *Cf. Jefferson v. Upton*, 560 U.S. 284, 293-94 (2010) (In a pre-AEDPA case, where the state court's findings were drafted exclusively by the state's attorneys, the Court noted that they have "criticized the practice" of the court adopting the findings of fact drafted by the state.)

Reasonable jurists could debate whether, as Cooper asserted (Docket # 147 at 59), that the state district court findings, as adopted by the Nevada Supreme Court, are the result of a deficient fact-finding procedure that negates the presumption of correctness. "[W]here the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004), *abrogated on other grounds, Murray v. Schriro*. 745 F.3d 984, 1000 (9th Cir. 2014).

The district court's dismissive and strained interpretations of Cooper's factual assertions and evidence is debatable among jurists of reason. In the instant matter, the district court, as well as the Nevada Supreme Court, ignored facts that were probative and central to Cooper's *Brady* claim. Citing *Miller-El*, 537 U.S. at 346, this Court noted: "[T]he state-court fact-finding process is undermined where the state

22

court has before it, yet apparently ignores, evidence that supports petitioner's claims."

*Taylor v. Maddox*, 366 F.3d at 1001.

Cooper detailed the requirements necessary for him to prevail on his *Brady* claim: (1) the evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either wilfully or inadvertently; and (3) prejudice must have resulted. *Strickler v. Greene*, 527 U.S.263, 281-82 (1999).

Reasonable jurists could debate the merits of Cooper's *Brady* claim. Cooper provided detailed arguments (incorporated herein by reference), setting forth the relevant factual and legal underpinnings of his claim to demonstrate that he could successfully satisfy all three *Brady* requirements. Docket #147 at 47-69. Cooper's argument for relief on the merits is outlined as follows:

    a.    The evidence that the district attorney investigators and Wells had an agreement with regard to Wells's testimony against Cooper in exchange for "money" was exculpatory of Cooper's guilt and impeached the credibility of Wells. (Docket #147 at 48-50.)

    b.    The evidence that Wells told the investigators that he did not see Cooper shoot the victim, that he testified in order to get the money promised to him by the district attorney investigators and that his testimony was coached by the investigators and was wilfully or inadvertently suppressed by the State. (Docket#147 at 50-52.) That the prosecutor was not in the hallway of the court when Wells was being coached by the investigator does not negate the prosecutor's duty of disclosure. The prosecutor's

23

failure to disclose the investigators' inducements to secure Wells's false testimony, whether or not he was personally aware of the information at the time Wells testified, violated Cooper's right to due process and a trial worthy of confidence. (*Id.*)

c.  Well's false testimony at trial was material because Wells's credibility was vitally important to the prosecution case. (Docket #147 at 52-57.) Wells was the State's **only** witness whose testimony the prosecution could embrace in whole cloth without having to resort to impeachment by means of prior inconsistent statements to support the State's theory of the case. (*Id.* at 53-55.)[10]

d.  In support of the assertion that the Nevada Supreme Court's decision was based on an unreasonable determination of the facts under §2254(d)(2), and was contrary to and/or an unreasonable application of clearly established federal law under §2254(d)(1) (*Id.* at 57-69), Cooper conducted a detailed comparison of Wells's testimony with the testimony of the other trial witnesses.

---

[10] By the time the investigators brought Wells to court, the State's case was falling apart. The witnesses's testimony was so unreliable that the prosecution resorted to introducing the witnesses's prior unread and unsigned police statements - to discredit the trial testimony of their own witnesses - in order to establish the State's theory of the case. It was not until Wells was put on the stand that the State finally had a witness who testified that they actually **saw** Cooper shoot Williams. *See* Docket #53, Ex. 15 at 328, 335, 365, 376, 412; *see also* Docket #147 at 37. The prosecutor encouraged the jury to accept Wells's version of events with good reason. Wells had no prior inconsistent police statement or preliminary hearing testimony as did the State's other witnesses, with the exception of 69-year-old witness, Will Norman. *See* Docket #147 at 63-64.

The district court (and the Nevada Supreme Court) also failed to address the trial prosecutor's statements acknowledging that Wells was a "very important witness" and a "key witness in this case". Docket #63, Ex. 101 at 22, 37.

*Id.* at 37-40.[11]

> The discrepancies between Wells's testimony and that of Larry Collier, Deborah Manor and Will Norman provides objective proof that Wells was coached by the investigators. Wells's trial testimony **does not** match Mr. Norman's because Mr. Norman testified the day after Wells (November 4, 1983). Wells's trial testimony **does not** match Collier and Manor's trial testimony but it **does** match both Collier and Manor's (unread and unsigned) police statements. This is because the investigators were not present during Collier and Manor's trial testimony so they could not coach Wells as to Collier and Manor's trial testimony. During the time that Collier and Manor were testifying on November 3, 1983, the investigators were at Clark High School and Rancho High School picking up Wells and Barbara Wesley (a witness who did not testify at trial) to bring them to court . *See* Docket #147 at 1-5.

The district court was particularly dismissive of Cooper's assertions regarding the recent ending of the "Clark County District Attorney Office's long-standing practice of witness fee payments for pretrial conferences". Docket #147 at 67;

---

[11] Notably absent from the Nevada Supreme Court and the district court's criticism of Wells' trial testimony as compared to his 2004 evidentiary hearing testimony, is an acknowledgment or accommodation for the fact that at the time of the trial Wells was a 15-year-old ninth grade student. It is beyond cavil that the Supreme Court recognizes that children are different from adults. *Cf. Roper v. Simmons*, 543 U.S. 551, 569 (2005) (recognizing that minors frequently lack maturity and have an underdeveloped sense of responsibility that often results in impetuous and ill-considered actions and decisions. "[Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage.") Both the district court and the Nevada Supreme Court cherry-picked from Wells's testimony facts they identified as believable to support their conclusions, yet dismissed other facts testified to by Wells as unbelievable if those facts it did not support their conclusion. *See e.g.* Docket#147 at 44-46.

Docket #153 at 21.  Cooper has always maintained that his argument was not directed to the general legitimacy of witness fees.  Cooper's argument is that the district attorney's payment to Wells should have been disclosed to the defense.[12]

Cooper's trial took place in 1983.  The Clark County District Attorney's dubious practice regarding witness compensation has not abated.  As recently as April 2, 2015, the Clark County District Attorney was ordered by a Nevada state district court judge to make public the records of payments made to witnesses.  (*See Las Vegas Review Journal*, April 3, 2015, "Judge rules DA must make public witness payment records"; *see also Las Vegas Review-Journal v. Wolfson*, Clark County, Nevada, Eighth Judicial District Case No. A-14-711233.)

In this case, the district court agreed with the Nevada Supreme Court's conclusion that "it appears that Wells was simply paid witness fees for his trial appearance and pretrial meetings with investigators." (Docket #65, Ex. 124 at 16),

---

[12] The importance of the voucher payment, besides corroborating Wells's testimony that Wells did in fact receive money from the State, is that it also corroborates Wells's statement that the district attorney investigator told Wells that he would get "more money" than he was entitled to if he testified the way the investigators wanted him to.  *See* Docket #66, Ex. 129 at 9-10.  Wells was told that he was to only receive around $20.00 - $25.00, but that he would be given more money if his testimony could be used: "He said we're gonna give you some more. Your check will be better if you go on and do what we ask you to." *Id.* at 10; "He said I was supposed to get twenty dollars.  Twenty-five dollars or something.  The man give [sic] me about a hundred bucks." *Id.* at 14.

concluding that "the Nevada Supreme Court's conclusion that payment of the fee was not *Brady* material was not unreasonable." Docket #153 at 21. The district court's conclusion is debatable among jurists of reason.

When questioned recently about the district attorney's practice of paying witnesses for pretrial conferences, current Clark County District Attorney Steven Wolfson indicated that the practice of paying witnesses for non-court appearances, such as pretrial meetings, was "probably inappropriate." *8 News Now* Article, Las Vegas, Nevada, November 11, 2013. "The payment of a witness fee for a preparatory interview is not going to take place in the DA's office anymore." *Id.* If the issue of the appropriateness of payment for a pretrial interview with an attorney from the district attorney's office is viewed as "probably inappropriate", certainly the question of the appropriateness of a witness being paid for a pretrial interview with an investigator from the district attorney's office is debatable among jurists of reason.[13]

Further, under the version of Nev.Rev.Stat. section 50.225 that was in effect at the time of Cooper's trial, a witness under subpoena was entitled to $25.00 fee for

---

[13] However, the record demonstrates that a "pretrial conference" between the prosecutor and Wells did not take place. On the first day of trial, the prosecutor advised the court that he had never personally spoken to Wells before. Docket #53, Ex. 14 at 12. Wells testified that at "12:30" p.m., on the day he testified was the "first time" that he talked to the prosecutor. Docket #53, Ex. 15 at 296.)

"each day's attendance" in court.[14]  Wells testified one afternoon only while the witness payment voucher verifies that he received payment for three days of testimony ($75.00).  Docket #62, Ex. 99.  The fact that the $75.00 that Wells received could be portrayed as a standard witness fee does not negate the basis of Cooper's claim.  Wells believed that he was being offered "money" in exchange for his testimony against Cooper.  It was Wells' subjective belief that even though he could not identify the shooter, if he testified that Cooper shot the victim he would receive the money.

Reasonable jurists could debate the district court's characterization of Wells's subjective belief of payment in exchange for his testimony as irrelevant to Cooper's *Brady* claim.  It is at least debatable that Wells's motive to testify is pertinent to the review of Cooper's *Brady* claim.  *See Benn v. Lambert*, 283 F.3d 1040, 1057 (9th Cir. 2002) ("Disclosure of an agreement ... could have allowed the jury to reasonably conclude that [the witness] had a motive other than altruism for testifying on behalf of the State.") (internal quotations and citations omitted.)

---

[14] While subpoenas were located in the district court file for the other trial witnesses, no subpoena for Wells is in the file.  *See* Witness Subpoenas, Docket #63, Ex. 101.  It is undisputed that on the day that he testified, Wells was picked up from school by the district attorney investigators and brought to court to testify without his mother's knowledge or permission.  Docket #63, Ex.103 (Affidavit); *see also* Docket #62, Ex. 100 at 12-14.  Even assuming there was a subpoena for Wells, that statute provides for less money than he was paid.

28

Whether or not Wells was entitled to a $75.00 witness fee is not the issue. The issue in this case that Wells believed that he would receive money if he testified that Cooper was the shooter. Regardless of the legality or ethical concerns regarding the district attorney's payments to witness for pretrial conferences, "[p]ayments to witnesses are *Brady* material", as are "[c]ooperation agreements". *United States v. Acosta*, 357 F.Supp.2d 1228, 1243 (D.Nev. 2005). As noted by the district court in *Acosta*:

> Nevada ... has adopted the ABA Standards for Criminal Justice ... and Nevada Supreme Court Rule ("SCR") 179(4), derived from ABA Model Rule 3.8(d), defines the scope of the duty to disclose "the prosecutor in a criminal case shall ... [m]ake timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigate the offense.
> . . .
> Simply because "material" failures to disclose exculpatory evidence violate due process does not mean only "material" disclosures are required. Whether evidence is "useful," "favorable," or "tends to negate the guilt or mitigate the offense" are semantic distinctions without a difference in a pretrial context.

*Id.* at 1232-33. The district court's acknowledgment in *Acosta* that the district attorney's pretrial payments to witnesses "are *Brady* material" supports a finding that the issue is subject to debate among jurists of reason.

Cooper submits that he has demonstrated that reasonable jurists could debate that the Nevada Supreme Court unreasonably determined that the prosecution's

failure to disclose evidence regarding Wells was immaterial under *Brady*. The possibility of even one juror finding reasonable doubt as to Cooper's guilt had the exculpatory and impeachment evidence been disclosed was reasonably likely. *See United States v. Kohring*, 637 F.3d 895, 906 (9th Cir. 2011) (there is a reasonable probability that the withheld evidence would have altered at least one juror's assessment of the evidence) (internal quotations and citations omitted.)

It is at least debatable among reasonable jurists that confidence that Cooper received a fair trial is lacking given Wells's importance to the State's case and the jury's ignorance of Wells's true role at Cooper's trial. *Kyles*, 514 U.S. at 434.

### 3. Reasonable Jurists Could Debate Whether The District Court Erred In Denying Cooper's *Strickland* Claim That Trial Counsel Was Ineffective For Failure To Object To Instances Of Prosecutorial Vouching For A Trial Witness.

The district court denied Cooper's *Strickland v. Washington*, 466 U.S. 668 (1984) claim, raised in Ground Seven(A)(3) of the petition (Docket #51), that trial counsel was ineffective for failing to object to the prosecutor's vouching for the credibility of Wells's testimony.[15]  Docket #51 at 37-38; Docket #147 at 69-81.  The

---

[15] In his petition, Cooper also raised as grounds for relief the ineffective assistance of appellate counsel for failure to raise as issues on direct appeal Ground Eight(3) prosecutorial misconduct for improper vouching and Ground Eight(5) the trial court's improper bolstering and questioning of Wells.  Docket #51.  Those grounds for relief were denied by the district court on the merits.  Docket#153.

(continued...)

district court found that the Nevada Supreme Court's decision was entitled to deference and was not objectively unreasonable.  Docket #153 at 23, 24.

However, despite noting that the question of whether the prosecutor's comments "constituted improper vouching is subject to reasonable debate" (Docket #153 at 23), the district court denied Cooper a COA.

> Here, whether or not the comments at issue constituted improper vouching is subject to reasonable debate.  **On the one hand**, the focus of the comments was Wells's courage, not his veracity.  And, as the Nevada Supreme Court noted, the assertion that it took courage for Wells to testify was a reasonable inference that could be drawn from evidence that at least one person had been warned not to testify.  **On the other hand**, by referring to Wells as a "hero", the prosecutor was implicitly suggesting that he must be telling the truth.  **And**, the prosecutor's claim that "[n]obody ... sent him down here" is arguably a reference to extrinsic information that supported Wells's testimony.

Docket #153 at 23 (emphasis added.)  The district court's engaging in an analysis of both sides of the debate, affirms that Cooper has met the *Barefoot/Slack/Miller-El* standard for certification.

Based on the above acknowledgment by the district court that Ground Seven(A)(3) "is subject to reasonable debate" (Docket 153 at 23), Cooper submits that he has met the standard for a COA to issue as to whether trial counsel performed reasonably in failing to object to the prosecutor's declaring Wells a "hero" and

---

[15](...continued)
Cooper does not include Grounds Eight(3) and Eight(5) in this application for a COA.

advising the jury that they could trust the credibility of Wells's testimony.

## II.

## CONCLUSION

Cooper respectfully submits that the proposed assignments of error satisfy the standard set forth in 28 U.S.C. § 2253(c)(2) and the *Barefoot/Slack/Miller-El* test for certification and are worthy of appellate review. Citing *Slack* and *Miller-El*, this Court noted: "[T]he Supreme Court has made clear that the standard for obtaining a COA is not a particularly exacting one." *Wilson v. Belleque*, 554 F.3d 816, 826 (2009). This Court also noted: "The standard for a certificate of appealability is lenient." *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010), *overruled on other grounds*, *Swarthout v. Cooke*, 131 S.Ct. 859 (2011) (per curiam).

"What the requirement of a certificate of appealability does, and all it does, is screen out of the federal appellate court claims that are not even debatable among reasonable judges, which is to say, frivolous claims." *Hayward*, 603 F.3d at 554; *see also Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) ("[T]he COA requirement constitutes a gatekeeping mechanism that prevents us from devoting judicial resources on frivolous issues while at the same time affording habeas petitioners an opportunity to persuade us through full briefing and argument of the potential merit of issues that may appear, at first glance, to lack merit.")

Cooper has demonstrated that his *Napue*, *Brady* and *Strickland* claims are not "frivolous", are debatable among jurists of reason, are adequate to deserve encouragement to proceed further and are not lacking any factual basis in the record. Given the "non-demanding standard" for issuance of a COA, *Wilson v. Belleque*, 554 F.3d at 826, and based upon the above arguments, Cooper respectfully requests that this Court issue a Certificate of Appealability on the following issues:

1.    WHETHER THE DISTRICT COURT ERRED IN DENYING COOPER'S *NAPUE v. ILLINOIS* CLAIM THAT HIS CONVICTION WAS BASED ON FALSE TESTIMONY AS DEMONSTRATED BY A TRIAL WITNESS' RECANTATION OF HIS TRIAL TESTIMONY.

2.    WHETHER THE DISTRICT COURT ERRED IN DENYING COOPER'S *BRADY v. MARYLAND* CLAIM THAT THE PROSECUTION FAILED TO PRODUCE MATERIAL EVIDENCE REGARDING A TRIAL WITNESS.

3.    WHETHER THE DISTRICT COURT ERRED IN DENYING COOPER'S *STRICKLAND v. WASHINGTON* CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO OBJECT TO INSTANCES OF PROSECUTORIAL VOUCHING FOR A TRIAL WITNESS.

DATED this 17th day of April, 2015.

LAW OFFICES OF THE
FEDERAL PUBLIC DEFENDER

By: _____    _____
    MEGAN C. HOFFMAN          DANICE ARBOR JOHNSON
    Assistant Federal Public Defender    Research and Writing Attorney

## CERTIFICATE OF SERVICE

| | |
|---|---|
| RICKEY COOPER, | CA No.  15-15755 |
| Petitioner- Appellant, | DC No. 3:97-cv-00222-JCM-WGC |
| vs. | (Nevada, Reno) |
| E.K. McDANIEL, Warden, et al., | |
| Respondents-Appellees. | |

I hereby certify that on April, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing documents by First-Class Mail, postage pre-paid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days, to the following non - CM/ECF participants.

**CM/ECF PARTICIPANT**

Robert Wieland
Senior Deputy Attorney General
Appellate Division
100 North Carson Street
Carson City, Nevada  89701-4717

**NON CM/ECF PARTICIPANT**

Rickey Cooper
No. 19118
Southern Desert Correctional Center
PO Box 208
Indian Springs, NV 89070-0208

/s/ *Susan Kline*
Susan Kline, An employee of the
Federal Public Defender,
District of Nevada